UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA INC., an Idaho corporation,<br><br>              Plaintiff,<br>   v.<br><br>BRIAN BARTHOLOMEW and ANGELIQUE BARTHOLOMEW, husband and wife<br><br>              Defendant. | Case No. 4:12-cv-00216-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Remand to State Court (Dkt. 2). For the reasons explained below, the Court will deny the motion.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Melaleuca is a consumer goods company that sells primarily nutritional, personal care, and household products. Melaleuca sells products directly to its customers by using independent contractors called Marketing Executives. When Marketing Executives join Melaleuca, they sign what is called an Independent Marketing Executive Agreement with Melaleuca. The Bartholomews were Marketing Executives at Melaleuca until recently, when they left Melaleuca and joined another multi-level marketing company called Independent Energy Alliance ("IEA").

On April 20, 2012, Melaleuca filed suit against the Bartholomews in the Seventh Judicial District of the State of Idaho. Melaleuca claims that the Bartholomews breached a policy contained in the Independent Marketing Executive Agreement by soliciting other Melaleuca Marketing Executives to join IEA. The Bartholomews removed the case to this Court on May 7. On the same day, Melaleuca moved to remand, claiming lack of jurisdiction for failure to meet the minimum amount in controversy.

In its complaint, Melaleuca claims damages of not less than $25,000 each for past and future losses; a temporary restraining order, preliminary injunction, and permanent injunction directing the Bartholomews to "cease and desist from raiding Melaleuca independent Marketing Executives, clients and Customers;" and attorney's fees and costs of suit. *Complaint*, at 4-5, ¶¶ 1-4 (Dkt. 1-3). Melaleuca also expressly reserved the right to seek punitive damages in its original complaint. *Id.*, at 5, ¶ 5. The Court has already granted a modified temporary restraining order. Dkt. 13.

## LEGAL STANDARD

Removal from state court is governed by 28 U.S.C. § 1441 and 28 U.S.C. § 1332. Rule 1441(b) allows for removal based on diversity of citizenship, which is further defined by Rule 1332(a). This rule requires that the parties have diverse citizenship and that the amount in controversy exceed the sum or value of $75,000.

Federal courts strictly construe the removal statute against removal. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), *citing Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). In diversity cases where the amount in controversy is in doubt, there is a presumption against removal jurisdiction, which means that the defendant always has the burden of establishing that removal is proper. *Id.*, *citing Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990). This burden is satisfied if the plaintiff claims a sum greater than the jurisdictional requirement of $75,000 or, if the amount claimed is unclear from the complaint and the defendant proves by a preponderance of the evidence that "more likely than not" the jurisdictional requirement is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). This "more likely than not" standard strikes an appropriate balance between the plaintiff's right to choose its forum and the defendant's right to remove. *Id.*; *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).

To determine whether the defendant has proved that the amount in controversy has been met, the Court should consider (1) the petition for removal and (2) later-filed

opposition and affidavits. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002), citing *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969). Relief which may be included in the amount in controversy includes (1) compensatory damages, (2) punitive damages, (3) value of injunctive relief, and (4) attorney's fees. *Id.* at 840; *Simmons v. PCR Technology*, 2009 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

## ANALYSIS

The parties agree that complete diversity is not in question—rather, the conflict concerns the amount in controversy. Because the complaint specifies "at least" $50,000 in damages, the amount in controversy in this case is unclear on its face.[1] The burden is therefore upon the Bartholomews to prove by a preponderance of the evidence that it is more likely than not that more than $75,000 is at stake. The Bartholomews suggest that the value of the injunction, attorney's fees and costs, and punitive damages add up to more than $25,000, and that this amount, when coupled with the $50,000 in past and future loses asserted in the complaint, clearly exceed the jurisdictional minimum.

---

[1] The Bartholomews argue that the injunction's value to Melaleuca makes jurisdiction facially apparent from the complaint. *See Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). They argue that "[t]o the extent Plaintiff alleges the $50,000 includes **future** damages, that argument is nonsensical considering Plaintiff has also requested broad injunctive relief which would prevent any such purported future damages." *Def.'s Opp.* at 8, n. 2 (Dkt. 23). Relying on this assumption, the Bartholomews conclude that all future damages are part of the value of the injunction. However, Melaleuca seeks recovery for future damages from alleged past behavior (i.e. recruiting a current Marketing Executive) as well as an injunction to prevent future breach of contract (i.e. recruiting other Marketing Executives). These claims are separate, so the amount in controversy is not facially apparent.

1.     **Value of the Injunction**

"[I]n determining the amount in controversy, [the court] may also include the value of the requested injunctive relief to either party." *International Padi, Inc. v. Diverlink*, 2005 WL 1635347, *1 (9th Cir. 2005). Thus, jurisdiction is appropriate if the value of the injunction to Melaleuca or its value to the Bartholomews, combined with the $50,000 for past and future loss sought by Melaleuca, exceeds $75,000.

The Bartholomews argue that the injunction sought by the plaintiffs would so affect the Bartholomews' business for the next year that the injunction's value to them is enough to satisfy the amount in controversy requirement. Specifically, they claim that Mr. Bartholomew's real estate business and their work through IEA would each be profoundly affected by the proposed injunction.

Mr. Bartholomew is a realtor and co-broker. He testifies that he sells between two and three pieces of real estate per month at around $9,000 commission per sale. *Def.'s Decl.*, at ¶ 10, Dkt. 23-4. He also testifies that his pools of real estate contacts and Melaleuca contacts largely overlap. *Id.*, at ¶ 11, Dkt. 23-4. Mr. Bartholomew's future business in real estate will therefore likely involve some sales to Melaleuca contacts, customers, and Marketing Executives.

Melaleuca argues that Mr. Bartholomew's real estate sales are irrelevant to the proposed injunction because "selling someone (whether or not a Marketing Executive) a piece of real estate is not 'recruiting to participate in' another 'business venture,'" and is therefore not covered by the contract. *Pl.'s Reply* at 7, Dkt. 27. However, Mr.

Bartholomew testifies that some of his real estate sales are investment purchases or otherwise within the definition of "business ventures." *Def.'s Decl.*, at ¶ 10, Dkt. 24-3.

Under these circumstances, a fair amount of Mr. Bartholomew's real estate sales would probably not be affected by the proposed injunction. But at least some of his sales—investment sales to Melaleuca customers or Marketing Executives—would likely be prohibited by a permanent injunction in the form sought by Melaleuca.[2] Mr. Bartholomew predicts that between one-third and one-half of his sales would be affected. *Id.*, at ¶ 12. It is difficult for the Court to make a judgment on whether that is an accurate assessment, but even if only 3 of the approximately 30 properties (only 10%) he testifies he will sell in a year fall into this category, the total loss amount would exceed $25,000. If one-third (the bottom end of Mr. Bartholomews' estimation) of the sales were affected, the total loss amount would exceed $75,000.

The Bartholomews also predict a loss of income from their new IEA business if the injunction is ordered. They estimate that without the injunction they would sign up in excess of 400 individuals as IEA customers with whom they had contact or whose contact information they obtained through Melaleuca. *Id.*, at ¶ 8. At the $62 commission per customer they testify they would receive from IEA, this amounts to approximately $25,000. This seems somewhat optimistic, but again the Court is not in an ideal position

---

[2] The Court notes that although it has entered a permanent injunction that enjoins the Bartholomews from recruiting Customers and Marketing Executives only for other multi-level marketing businesses, that is not what is ultimately sought by Melaleuca, and the Court must consider what is sought in the complaint when considering the jurisdictional amount question. Thus the Court must consider Mr. Bartholomew's real estate business at this point.

to check the accuracy of the estimate. The Court does note that it is somewhat suspicious that they predict they would recruit a number of customers that happens to add up to almost exactly the $25,000 needed to satisfy the jurisdictional minimum. However, some IEA sales are very likely, given the Bartholomews success at Melaleuca, and those sales are likely to be affected by the proposed injunction.

Under these circumstances, the Court finds that the Bartholomews have met their burden that "more likely than not" the jurisdictional requirement is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).[3] The injunction, based on its value to Bartholomews, is more likely than not worth more than $25,000, and potentially more than $75,000, based on Mr. Bartholomew's real estate sales losses alone. Additionally, the Bartholomews will more likely than not lose income from loss of potential IEA customers. When coupled with the additional $50,000 sought by Melaleuca for past and future loss, the amount is well in excess of $75,000.[4]

## 2.   Melaleuca's Stipulation to Damages

One day after removal, Melaleuca stipulated that it will not seek more than $75,000 in this suit. *Aff.*, at ¶ 8 (Dkt. 2-2). The Ninth Circuit has said that, subject to a

---

[3] The Court need not address the additional value of claimed attorney's fees and punitive damages.

[4] The injunction may have even greater value to Melaleuca than to the Bartholomews, though the parties offered little evidence or argument to put a number to that value. The $50,000 in damages appears to be centered on one alleged effort to recruit a Marketing Executive to IEA. With this valuation by Melaleuca, it seems that a year's worth of further "raiding" of Melaleuca's sales force and customer base may be worth something, and possibly multiples of $50,000, to the company. However, the Court need not make such a determination because the loss amount to the Bartholomew's exceeds $75,000.

"good faith" requirement in pleading, a plaintiff can sue for less than the amount she may be entitled to in order to avoid federal jurisdiction. *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994, 999 (9th Cir. 2007) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). However, while a plaintiff is free to plead to an amount below the jurisdictional minimum, reducing the amount in controversy below the jurisdictional minimum once jurisdiction has vested will not destroy federal jurisdiction. In *St. Paul Mercury Indemnity Company v. Red Cab Co.*, 303 U.S. 283, 291-92 (1938), the case cited by the Ninth Circuit for the above proposition, the Supreme Court held that even if "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." This illustrates the principle that the amount in controversy is established with the filing of the complaint, and subsequent events which reduce the amount below the statutory limit do not oust jurisdiction. *See, e.g.*, *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lho0tka*, 599 F.3d 1102, 1108 (9th Cir. 2010).

 Thus, assuming that the amount in controversy at the time of the complaint was sufficient for jurisdiction to attach, as the Court has indicated is the case above, Melaleuca's stipulation cannot oust jurisdiction. Moreover, Melaleuca still seeks an injunction that is more likely than not enough to reach the jurisdictional minimum.

Melaleuca cannot simply stipulate that it does not intend for the injunction to be valued at more than $75,000.

## ORDER

**IT IS ORDERED THAT:**

1. Plaintiff's Motion to Remand to State Court (Dkt. 2) is **DENIED**.



DATED: July 19, 2012

_____
B. Lynn Winmill
Chief Judge
United States District Court